**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MATTHEW R. NATUSCH,**

            **Plaintiff,**

**v.**                          **//    CIVIL ACTION NO. 1:16CV81**
                                      **(Judge Keeley)**


**DELORIS J. NIBERT, individually**
**and in her capacity as Marion**
**County West Virginia Temporary**
**Family Court Judge; and**
**DAVID R. JANES, individually and**
**in his capacity as Marion County**
**West Virginia Circuit Court Judge,**

            **Defendants.**

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND**
**RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION**
**TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

On May 5, 2016, the pro se plaintiff, Matthew R. Natusch

("Natusch"), filed a complaint against the defendants, the

Honorable Deloris J. Nibert ("Judge Nibert") and the Honorable

David R. Janes ("Judge Janes"), in both their official and

individual capacities. (Dkt. No. 1). At the relevant time, Judge

Nibert and Judge Janes were West Virginia state court judges

presiding over the Family Court and Circuit Court in Marion County,

West Virginia, respectively. Pursuant to 28 U.S.C. § 636 and L.R.

Civ. P. 7.02(c) and 72.01(d)(6), the Court referred the action to

the Honorable James E. Seibert, United States Magistrate Judge

(Dkt. No. 6).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

The defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 18). On September 22, 2016, Magistrate Judge Seibert filed a Report and Recommendation ("R&R") recommending that the Court grant the defendants' motion to dismiss (Dkt. No. 31). Thereafter, Natusch timely objected to the recommendation (Dkt. No. 33). For the reasons that follow, the Court **ADOPTS** the R&R (Dkt. No. 31), **GRANTS** the defendants' motion to dismiss (Dkt. No. 18), and **DISMISSES** this case **WITHOUT PREJUDICE**.

## I. BACKGROUND

### A.    Factual Background

The Court draws its recitation of the facts from Natusch's complaint and construes them in the light most favorable to him. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

From the fall of 2002 to October 2003, Natusch lived in North Carolina with Michele Ice ("Ice"). During this time, a daughter was born to them on February 20, 2003 (Dkt. No. 1-4 at 1). On November 17, 2005, the Family Court in Wake County, North Carolina, entered a child custody and child support order (Dkt. No. 1 at 6). Thereafter, in 2007, the child custody and support matters were severed and assigned respectively to the Wake County Family Court

2

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

and Wake County Child Support Court. Id. On March 26, 2012, the
North Carolina Family Court granted Ice's motion to file for
modification of child custody in West Virginia, id., and on April
25, 2013, the Family Court of Marion County, West Virginia, assumed
jurisdiction over the matter (Dkt. No. 1-2 at 2).

On July 12, 2013, Judge Nibert held a hearing to address
school placement, child support, and several petitions to hold
Natusch in contempt. Id. at 1. Natusch appeared at the hearing to
contest both proper notice and West Virginia's exercise of
"jurisdiction both in matters of child custody and in child
support." Id. at 8, 12. Judge Nibert rejected both arguments and,
on August 20, 2013, entered an order finding Natusch in contempt,
modifying his parenting time, and accepting Ice's estimation of his
income. Judge Nibert then ordered Natusch to pay $705.92 per month
as child support. Id. at 4-6.

Natusch appealed this ruling to the Circuit Court of Marion
County, where Judge Janes affirmed the order in its entirety (Dkt.
No. 1-3 at 14). Natusch then appealed to the Supreme Court of
Appeals of West Virginia ("Supreme Court of Appeals"), arguing that
Judge Nibert lacked the power to modify his child support
obligation because the North Carolina court had relinquished

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

jurisdiction only over child custody matters (Dkt. No. 1-4). The
Supreme Court of Appeals, however, held that the authority to
decide child custody carried with it the authority to order child
support, and also concluded that Natusch had received sufficient
notice of the issues taken up at the July 12, 2013, hearing. Id. at
4, 6. It therefore affirmed the decision of Judge Janes in a
memorandum opinion dated November 25, 2014. Id. at 1. Natusch then
petitioned the Supreme Court of the United States ("Supreme Court")
for a writ of certiorari, which that court denied on April 27, 2015
(Dkt. No. 1 at 16-17).

Meanwhile, Natusch again appeared before Judge Nibert on
January 30, 2015, to contest the West Virginia court's jurisdiction
to determine child support. He argued that federal law precluded
such jurisdiction because Natusch was still a resident of North
Carolina. Id. at 15.[1] On March 9, 2015, Judge Nibert rejected this
argument and held Natusch in contempt of her previous child support
order. Judge Janes affirmed this ruling on May 22, 2015, concluding
that the Supreme Court of Appeals had previously rejected Natusch's

---

[1] Natusch avers that both the Marion County Prosecutor and the
West Virginia Bureau for Child Support agree that West Virginia
does not have jurisdiction to implement or enforce a child support
order against him (Dkt. No. 1 at 15, 21).

4

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

jurisdictional arguments (Dkt. No. 1-5 at 1-5). Ultimately, on June
12, 2015, Judge Nibert incarcerated Natusch for failing to comply
with her child support order (Dkt. Nos. 1 at 20; 1-6).

During the latter part of 2015, Natusch sought a declaration
in Wake County, North Carolina, regarding jurisdiction (Dkt. No. 1-
9; 1-10). Ultimately, on March 2, 2016, the state trial court in
Wake County entered an order declaring that "North Carolina has
continuing, exclusive jurisdiction over the matter of child
support," and thus had the controlling child support order (Dkt.
No. 1-12 at 5-6).

**B.    Procedural Background**

Natusch's primary claim is that both Judge Nibert and Judge
Janes deprived him of his rights within the meaning of 42 U.S.C.
§ 1983 when they "subject[ed] [him] to . . . unlawful 'orders'"
without due process (Dkt. No. 1 at 25). He alleges that he has been
a resident of North Carolina during all relevant times, and that,
under 28 U.S.C. § 1738B,[2] North Carolina retains continuing

---

[2] "A court of a State that has made a child support order
consistently with this section has continuing, exclusive
jurisdiction over the order if the State is the child's State or
the residence of any individual contestant unless the court of
another State, acting in accordance with subsections (e) and (f),
has made a modification of the order." 28 U.S.C. § 1738B(d).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

jurisdiction over all relevant child support matters, to the exclusion of West Virginia. Id. at 29. As a result, Natusch claims that the defendants acted unconstitutionally and unlawfully "in the absence of jurisdiction." Id. at 32.

Natusch's complaint seeks a variety of declaratory and injunctive relief in connection with his § 1983 claim. First, he seeks a declaration that no West Virginia state court "has, or has ever had, jurisdiction in matters of child support." Id. at 38. Second, he seeks a declaration that Judge Nibert and Judge Janes deprived him of his rights, privileges, and immunities under the Constitution and 28 U.S.C. §§ 1738 and 1738B. Finally, he seeks an injunction against "similar unlawful acts and other potential acts of discrimination and retaliation." Id. at 38-39.

In his second, third, and fourth claims, Natusch requests that the Court refer this matter to federal law enforcement due to violations of 18 U.S.C. §§ 4 and 2382, award him fees and costs pursuant to 42 U.S.C. § 1988, and declare that he has preserved his right to bring further claims against the defendants. Id. at 39.

Both Judge Nibert and Judge Janes moved to dismiss the complaint on May 26, 2016 (Dkt. No. 18). As a threshold matter,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

they argue that the Rooker-Feldman doctrine[3] precludes the Court from exercising jurisdiction over this case (Dkt. No. 19 at 10). Additionally, they argue that sovereign immunity and judicial immunity bar the recovery of damages, id. at 11-17, and that Younger abstention and the limitations of § 1983 foreclose the equitable and injunctive relief Natusch seeks. Id. at 17-22. Finally, they argue that Natusch has no private right of action under 18 U.S.C. §§ 4 and 2382. Id. at 22-23.

Following full briefing (Dkt. Nos. 27; 29), Magistrate Judge Seibert filed an R&R recommending that the Court grant the defendants' motion (Dkt. No. 31). Natusch filed timely objections (Dkt. No. 33), making the matter ripe for review by this Court (Dkt. No. 34).

## II. STANDARD OF REVIEW

### A.    Motion to Dismiss

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) allow a defendant to move for dismissal on the ground that the Court lacks subject matter jurisdiction or that the complaint does not "state a claim

---

[3] The Rooker-Feldman doctrine is named for the two Supreme Court cases that established it: Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

7

upon which relief can be granted." When reviewing the sufficiency
of a complaint, a district court "must accept as true all of the
factual allegations contained in the complaint." Anderson v. Sara
Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v.
Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not
need detailed factual allegations, a plaintiff's obligation to
provide the 'grounds' of his 'entitle[ment] to relief' requires
more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted).

A court is "not bound to accept as true a legal conclusion
couched as a factual allegation." Papasan v. Allain, 478 U.S. 265,
286 (1986). In order to be sufficient, "a complaint must contain
'enough facts to state a claim to relief that is plausible on its
face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at
547). "A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss
"does not resolve contests surrounding the facts, the merits of a

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

claim, or the applicability of defenses." <u>Republican Party of N.C.
v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992).

In deciding on the motion, the Court need not confine its
inquiry to the complaint; it may also consider "documents
incorporated into the complaint by reference, and matters of which
a court may take judicial notice." <u>Tellabs, Inc. v. Makor Issues &
Rights, Ltd.</u>, 551 U.S. 308, 322 (2007). "A copy of a written
instrument that is an exhibit to a pleading is a part of the
pleading for all purposes." Fed. R. Civ. P. 10(c). The Court may
also consider documents "attached to the motion to dismiss, so long
as they are integral to the complaint and authentic." <u>Philips v.
Pitt Cty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009).

**B.  Magistrate Judge's R&R**

When reviewing a magistrate judge's R&R, the Court must review
<u>de novo</u> only the portion to which an objection is timely made. 28
U.S.C. § 636(b)(1)(C). On the other hand, the Court may adopt,
without explanation, any of the magistrate judge's recommendations
to which the parties do not object. <u>See</u> <u>Camby v. Davis</u>, 718 F.2d
198, 199-200 (4th Cir. 1983). Courts will uphold those portions of
an R&R to which no objection has been made unless they are "clearly

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

erroneous." See Diamond v. Colonial Life & Accident Ins. Co.,
416 F.3d 310, 315 (4th Cir. 2005).

### III. DISCUSSION

After careful review, it is clear that the Rooker-Feldman
doctrine and the Eleventh Amendment divest this Court of subject
matter jurisdiction over Natusch's claims. Moreover, Natusch has
not established that he otherwise would be entitled to damages,
declaratory relief, or injunctive relief.

A.    **Subject Matter Jurisdiction**

1.    **The Rooker-Feldman Doctrine**

Magistrate Judge Seibert recommended that, because Natusch
failed to present an independent claim that does not stem from
state court proceedings, the Court lacks subject matter
jurisdiction under the Rooker-Feldman doctrine (Dkt. No. 31 at 2-
3). In his objections, Natusch argues that the Rooker-Feldman
doctrine is inapplicable because the defendants acted without
jurisdiction and rendered void judgments procured by fraud that
deprived him of a "full and fair opportunity" to litigate his
claims (Dkt. No. 33 at 6, 12).[4] For the reasons that follow, the

_____

[4] Natusch also argues that "the [C]ourt should narrow its
considerations to determine only if it has subject matter

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE

Court concludes that this argument is unavailing because Natusch's claims are directed solely at obtaining impermissible federal review of state court decisions.

### a.    Application of the Doctrine

Congress has vested federal review of state court decisions exclusively in the Supreme Court, which has discretion to grant a writ of certiorari. 28 U.S.C. § 1257(a). District courts, as courts of original jurisdiction, may not sit in direct review of state courts. Davani v. Va. Dep't of Trans., 434 F.3d 712, 717 (4th Cir. 2006). To enforce this distinction, the Rooker-Feldman doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Supreme Court intends that the doctrine reach "no further than necessary to effectuate Congress' allocation of subject matter jurisdiction between the

---

jurisdiction" over broad issues such as due process and federal statutes, leaving other "underlying layers of arguments" to be determined at trial (Dkt. No. 33 at 4, 13, 15-16). Of course, such a generalized jurisdictional inquiry would be inappropriate given the Court's duty to assess its subject matter jurisdiction.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

district courts and the Supreme Court." <u>Thana v. Bd. of License
Comm'rs for Charles Cty., Md.</u>, 827 F.3d 314, 319 (4th Cir. 2016).

The <u>Rooker-Feldman</u> doctrine applies when "the state-court
loser . . . seeks redress for an injury caused by the state-court
decision itself." <u>Davani</u>, 434 F.3d at 718. If the plaintiff "is
challenging the state-court decision," the doctrine bars federal
suit "even if the state-court loser did not argue to the state
court the basis of recovery that he asserts in the federal district
court." <u>Id.</u> at 719. Indeed, "[a] claim seeking redress for an
injury caused by the state-court decision itself - even if the
basis of the claim was not asserted to the state court - asks the
federal district court to conduct an appellate review of the state-
court decision." <u>Id.</u>

Here, Natusch claims that Judges Nibert and Janes violated his
constitutional rights when they rejected his claim of insufficient
notice and exercised jurisdiction over his child support
obligations (Dkt. No. 1 at 31-32). He seeks declaratory relief
affirming his argument that the defendants' state court decisions
were incorrect, and seeks injunctive relief to prevent similar
rulings in the future. <u>Id.</u>

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

In the Supreme Court's words, Natusch is a "state-court loser[] complaining of injuries caused by state-court judgments . . . inviting district court review and rejection of those judgments." See Exxon Mobile, 544 U.S. at 284. Nothing about his suit "qualifies as an independent, concurrent action that does not undermine the Supreme Court's appellate jurisdiction over state court judgments." Thana, 827 F.3d at 323.

On the contrary, Natusch seeks direct review of state court proceedings in which he litigated the very issues presented here. After he pursued the proper avenue for federal review, the Supreme Court declined to grant a writ of certiorari. Matt N. v. Michele I., 135 S.Ct. 1916 (2015). Based on these facts, the Rooker-Feldman doctrine clearly bars Natusch from complaining in federal court of injuries caused by those state court decisions.[5]

---

[5] Accord Bolick v. Sacavage, 617 F. App'x 175, 177-78 (6th Cir. 2015) (unpublished decision) (affirming dismissal of an action against state court judges seeking a declaration that certain judgments were void); Taylor v. Randoplh, 594 F. App'x 578, 579-80 (11th Cir. 2014) (unpublished decision) (affirming dismissal of a claim that state court judges acted improperly in a child custody proceeding); Marcianao v. White, 431 F. App'x 611 (9th Cir. 2011) (memorandum decision); Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166-67 (3d Cir. 2010) (quoting Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005)) ("Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the

13

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

### b. Exceptions to the Doctrine

Natusch argues that the <u>Rooker-Feldman</u> doctrine is inapplicable because (1) the defendants acted in the absence of jurisdiction, rendering void judgments; and (2) their judgments were fraudulently procured (Dkt. No. 33 at 7). Both arguments miss their mark.

First, Natusch argues that the <u>Rooker-Feldman</u> doctrine does not apply where a state court lacked jurisdiction to enter the judgment in question. <u>Id.</u> at 6-9. This "void <u>ab initio</u>" exception, however, has been applied almost exclusively to bankruptcy jurisdiction. <u>See, e.g.</u>, <u>Anderson v. Private Capital Grp., Inc.</u>, 549 F. App'x 715, 717 (10th Cir. 2013) (unpublished decision); <u>Schmitt v. Schmitt</u>, 324 F.3d 484, 487 (7th Cir. 2003). <u>But see</u> <u>Ark. Chronicle v. Easley</u>, 321 F. Supp. 2d 776, 789 (E.D. Va. 2004) (applying the exception outside bankruptcy where "the absence of state court jurisdiction [was] pellucidly clear"). In the bankruptcy context, "the exception allows federal bankruptcy courts to declare state court actions violating [an] automatic stay void,

---

return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

thereby preserving the preeminent federal role in bankruptcy proceedings." Schmitt v. Schmitt, 165 F. Supp. 2d 789, 796 (N.D. Ill. 2001), affirmed 324 F.3d 484 (7th Cir. 2003).

Aside from such proceedings, courts routinely apply the Rooker-Feldman doctrine despite allegations that a state court acted without jurisdiction. See, e.g., Houston v. Venneta Queen, 606 F. App'x 725, 733 (5th Cir. 2015) (unpublished decision); Requli v. Guffee, 371 F. App'x 590, 597 (6th Cir. 2010) ("Even if issued without jurisdiction, the order was still issued by a state court, and Rooker-Feldman bars a federal court from reviewing the constitutionality of that order."); Casle v. Tillman, 558 F.3d 1258, 1265 n.3 (11th Cir. 2009); In re Smith, 287 F. App'x 683, 685 (10th Cir. 2008) (unpublished decision) (rejecting "the proposition that there is a general exception to Rooker-Feldman when the state court is alleged to have acted without jurisdiction."); Adames v. Fagundo, 198 F. App'x 20, 22 (1st Cir. 2006) (unpublished decision); Doe v. Mann, 415 F.3d 1038, 1042 (9th Cir. 2005) ("Rooker-Feldman applies where the plaintiff in federal court claims that the state court did not have jurisdiction to render a judgment.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

Here, Natusch contends that no court in West Virginia had
jurisdiction to enter and enforce a child support order against him
(Dkt. No. 1 at 32). Even assuming he is correct, it would be
inappropriate to apply the "void _ab initio_" exception in this case;
unlike bankruptcy proceedings, federal courts do not have a
"preeminent federal role" to protect in child support matters. See
Schmitt, 165 F. Supp. 2d at 796. Indeed, there is a distinct
preference against federal involvement in such matters. See Moore
v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a
traditional area of state concern.").

Natusch fully litigated his jurisdictional argument in state
court and was denied a writ of certiorari by the Supreme Court of
the United States. The Fourth Circuit has not recognized a Rooker-
Feldman exception in such circumstances, and it is unlikely that
the Supreme Court would approve this Court's review of a decision
it has previously refused to take up.

Natusch next argues that the Rooker-Feldman doctrine does not
apply because the defendants' judgments were fraudulently procured
(Dkt. No. 33 at 9-10). Although the Fourth Circuit has recognized
such a "fraud exception" in the context of res judicata, it has
never done so regarding the Rooker-Feldman doctrine. Jordahl v.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

Democratic Party of Va., 122 F.3d 192, 203 n.11 (4th Cir. 1997)
(citing Resolute Ins. Co. v. North Carolina, 397 F.2d 586 (4th Cir.
1968)).[6] Indeed, the vitality of a "fraud exception" has been
questioned even in circuits that purport to have adopted one. See,
e.g., Dale v. Selene Fin. LP, No. 2:15CV1762, 2016 WL 1170772 (N.D.
Ohio Mar. 25, 2016). District courts in this circuit have refused
to create an exception in the context of Rooker-Feldman, and this
Court declines the invitation to do so in this case. See, e.g.,
Nelson v. Levy Ctr., LLC, No. 9:11-1184-SB-BHH, 2016 WL 176414, at
*6 (D.S.C. Mar. 30, 2016) (compiling cases).

Even assuming a "fraud exception" could apply, Natusch has
failed to plead that the relevant West Virginia court judgments
were procured by fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake."); Harrison v. Westinghouse Savannah

---

[6] In his arguments, Natusch appears to conflate the principles
of the Rooker-Feldman doctrine with those of res judicata (Dkt. No.
33 at 6, 9, 12) (citing Kremer v. Chem. Const. Corp., 456 U.S. 461,
481-82 (1982); Long v. Shorebank Dev. Corp., 182 F.3d 548, 561 (7th
Cir. 1999); Lewis v. E. Feliciana Parish Sch. Bd., 820 F.2d 143,
146 (5th Cir. 1987)). The Supreme Court has cautioned against this
logical error. Exxon Mobile, 544 U.S. at 283-84 ("Rooker-Feldman
does not otherwise override or supplant preclusion doctrine or
augment the circumscribed doctrines that allow federal courts to
stay or dismiss proceedings in deference to state-court actions.").

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

River Co., 176 F.3d 776, 782 (4th Cir. 1999) ("[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'").

Natusch relies on the following allegations in his complaint to establish that he has pleaded fraud:

> 29. Upon opening at the hearing, opposing counsel stated "There are two contempt petitions. We also had a hearing scheduled about the child's school . . . I <u>filed</u> (emphasis added) a motion to modify child support, as well, which I don't know if the Court wants to take that up today or not."
>
> 30. When plaintiff attempted to make objections to lack of proper Notice on the many issues that opposing counsel was bringing on, NIBERT interrupted "You're wasting The Court's time, and I'm not going to hear any more of this" and refused to review the record to determine if in fact opposing counsel had "filed" and properly noticed her multiple alleged motions, even with NIBERT admitting "I don't know[,]" or to see that Plaintiff had received timely service.
>
> . . .
>
> 41. In the August 20, 2013 order NIBERT entered a finding: "7. A Motion to Modify Child Support was <u>filed</u> by [Michele Ice] . . ."[] No evidence of any such motion exists in the case file.

(Dkt. No. 1 at 8-9, 12). According to Natusch, these allegations, found in the background section of his complaint, amount to a fraud

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

claim. The Court, however, finds that they clearly relate to the injury about which he actually does complain – a constitutional deficiency in notice (Dkt. No. 33 at 3).

It is thus clear that, under the Rooker-Feldman doctrine, the Court is barred from hearing this suit, and no purported exception to that doctrine is applicable. The Court therefore adopts Magistrate Judge Seibert's recommendation that the Rooker-Feldman doctrine bars the claims Natusch has asserted in this case. Accord Edwards v. Washington, No. 2:11-3518-SB-BM, 2012 WL 1229506, at *2 (D.S.C. Jan. 5, 2012).

### 2.   Sovereign Immunity

Magistrate Judge Seibert also recommended that Natusch cannot seek money damages from the defendants in their official capacity because such recovery is barred by the Eleventh Amendment (Dkt. No. 31 at 3-4). In his objections, Natusch argues that whether the defendants were "clearly in excess of . . . jurisdiction" should be decided at trial (Dkt. No. 33 at 13-14).

The Eleventh Amendment acts as a jurisdictional bar to suit: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

by citizens or subjects of any foreign state." U.S. Const. amend.

XI. The Supreme Court of the United States has made it clear that

official capacity damages actions are barred by the Eleventh

Amendment:

> [A]bsent waiver by the State or valid congressional
> override, the Eleventh Amendment bars a damages action
> against a State in federal court. This bar remains in
> effect when State officials are sued for damages in their
> official capacity. That is so because . . . "a judgment
> against a public servant 'in his official capacity'
> imposes liability on the entity that he represents."

Kentucky v. Graham, 473 U.S. 159, 169 (1985) (internal citations

omitted). "This immunity applies to state agencies that may

properly be characterized as 'arm[s] of the State,' as well as to

state employees acting in their official capacity." Harter v.

Vernon, 101 F.3d 334, 337 (4th Cir. 1996) (internal citations

omitted); see also N.Y. State Court Clerks Ass'n v. Unified Court

Sys. of the State of N.Y., 25 F. Supp. 3d 459 (S.D.N.Y. 2014)

(holding that state judges are immune from liability under the

Eleventh Amendment); Van Tassel v. Lawrence Cty. Domestic Relations

Section, 659 F. Supp. 2d 672, 695-96 (W.D. Pa. 2009) (same).

The Family Court and Circuit Court of Marion County are part

of the West Virginia judiciary, created by statute, and the

salaries of both family and circuit court judges are paid out of

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

the state treasury. W. Va. Code §§ 51-2-13, 51-2A-21. Natusch's challenge solely to the defendants' "disposition of state court proceedings" is clearly barred by sovereign immunity. Everson v. Doughton, 267 F. App'x 229, 230 (4th Cir. 2008) (unpublished decision). He has not pointed to an express waiver of this immunity by the state of West Virginia, and it is well-established that Congress did not intend to abrogate sovereign immunity when it enacted § 1983. Quern v. Jordan, 440 U.S. 332, 340 (1979). Therefore, the Court adopts the recommendation in the R&R that the Eleventh Amendment bars any recovery of damages from the defendants in their official capacity (Dkt. No. 31 at 4).

**B.   Monetary and Injunctive Relief**

Aside from jurisdictional prohibitions, Natusch's claims also are barred by the doctrine of judicial immunity and § 1983's limitation on injunctive relief against judicial officials.[7]

_____

[7] The R&R also recommended that the Court exercise Younger abstention (Dkt. No. 31 at 5-7). The Supreme Court recently admonished, however, that Younger abstention, together with the factors articulated in Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423 (1982), applies only in limited circumstances. Sprint Commc'ns, Inc. v. Jacobs, 134 S.Ct. 584, 592-93 (2013). These circumstances include "quasi-criminal" civil enforcement proceedings, which are typically initiated by the state, have the goal of punishing the federal plaintiff, or involve an investigation. Id. Natusch's child custody and support proceeding implicates none of these factors; Younger abstention

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

### 1.  Judicial Immunity

In the R&R, Magistrate Judge Seibert concluded that Natusch
cannot recover damages from the defendants in their individual
capacities because they are entitled to the protection of judicial
immunity (Dkt. No. 31 at 5). Natusch argues that the defendants
acted without jurisdiction and the doctrine of judicial immunity
therefore is inapplicable (Dkt. No. 33 at 15-16).

"A judge is absolutely immune from liability for his judicial
acts even if his exercise of authority is flawed by the commission
of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359
(1978). Thus, judicial immunity applies if an action can be
characterized as "judicial" and was not taken in the "clear absence
of all jurisdiction." King v. Myers, 973 F.2d 354, 356-57 (4th Cir.
1992). Judicial acts are those "normally performed by a judge." Id.
at 358 (quoting Stump, 435 U.S. at 362). An act is not in the
"clear absence of all jurisdiction" merely because it is malicious,

---

thus is inapplicable. Accord Strom v. Corbett, 2015 WL 4507637, at
*9 (W.D. Pa. July 24, 2015) (reasoning that a divorce proceeding is
not quasi-criminal). Other courts that have considered similar
proceedings but reached a contrary conclusion have failed to
account for the Supreme Court's specific mandate that a proceeding
be "quasi-criminal" in nature prior to assessing the Middlesex
factors. See, e.g., Johnson v. Byrd, No. 1:16cv1052, 2016 WL
6839410, at *7-*9 (M.D.N.C. Nov. 21, 2016) (magistrate judge's
memorandum opinion and recommendation).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

corrupt, or in excess of jurisdiction. Rather, the determinative question is whether the judge "had jurisdiction over the subject matter before him." Id. at 357; see also Riqueroa v. Blackburn, 208 F.3d 435, 443 (3d Cir. 2000) ("[W]here a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.").

The actions complained of by Natusch without question are judicial acts "normally performed by a judge." King, 973 F.2d at 358 (quoting Stump, 435 U.S. at 362). The complaint alleges that Judge Nibert conducted hearings, entered orders, and held Natusch in contempt for failing to comply with those orders. Likewise, Judge Janes reviewed and denied Natusch's appeals from Judge Nibert's orders (Dkt. No. 1 at 29-30).

Judge Nibert and Judge Janes clearly had subject matter jurisdiction over the issues they decided. The West Virginia Code vests jurisdiction in family court judges to consider actions to obtain orders of child support, as well as motions to modify existing orders. W. Va. Code § 51-2A-2(a)(2), (9). Family court judges also have jurisdiction over civil contempt proceedings brought "to enforce an order of . . . child support or to enforce an order for a parenting plan." Id. § 51-2A-2(a)(10). Circuit court

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

judges, moreover, possess jurisdiction to hear appeals from final orders of the family court. Id. §§ 51-2-2(e), 51-2A-11(a).

Based on such jurisdiction, Natusch's contention that the acts of the defendants were erroneous or in excess of jurisdiction pursuant to 28 U.S.C. § 1738B does not deprive the defendants of their judicial immunity. The Court therefore adopts Magistrate Judge Seibert's recommendation that the defendants are judicially immune from suit (Dkt. No. 31 at 5).

**2.   § 1983 Injunctive Relief**

The R&R also found that Natusch is not entitled to injunctive relief under § 1983 (Dkt. No. 31 at 7), which precludes such relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Natusch argues that the "[d]efendants violated several declaratory decrees from North Carolina state courts," and that declaratory relief was unavailable to him at the time (Dkt. No. 33 at 18).

Natusch's objection is without merit. A "declaratory decree" within the meaning of § 1983 is "an order directing <u>a particular judicial officer</u> to take or refrain from taking a particular action

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE

in a particular dispute." Murphy v. Ross, No. 3:14cv870, 2015 WL 1787351, at *3 (E.D. Va. Apr. 15, 2015) (quoting Pulia v. Cross, No. 12-CV-54-PB, 2012 WL 3257824, at *3 (D.N.H. Aug. 8, 2012)); see also Tesmer v. Kowalski, 333 F.3d 683 (6th Cir. 2003). Natusch has presented the Court with orders entered in North Carolina courts (Dkt. No. 1-12), but none of these directs Judge Nibert or Judge Janes to take or refrain from taking any action. Moreover, Natusch has made what amounts to an unsupported assertion that "declaratory relief was unavailable" (Dkt. No. 33 at 18). Therefore, the Court adopts Magistrate Judge Seibert's recommendation that Natusch is not entitled to injunctive relief under § 1983 (Dkt. No. 31 at 7).

### C.   18 U.S.C. §§ 4 and 2382

As noted by Magistrate Judge Seibert, Natusch has conceded that no private cause of action exists under the criminal statutes found at 18 U.S.C. §§ 4 and 2382 (Dkt. No. 31 at 7). In his objections, Natusch stated that he "has no response to the courts [sic] conclusion[]" (Dkt. No. 33 at 18). Having failed to articulate a specific objection, Natusch has waived his right to de novo review of this claim. See Camby, 718 F.2d at 199-200. Therefore, finding no clear error, the Court adopts Magistrate

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

Judge Seibert's recommendation that Natusch's second claim must be dismissed.

**D.   Other Claims**

Natusch's third and fourth claims are also subject to dismissal. In his third claim, Natusch seeks to recover attorney's fees and costs under 42 U.S.C. § 1988; having failed to prevail on his § 1983 claim, however, he is not entitled to such a recovery. Id. § 1988(b). Finally, the Court has no authority "to preserve" other causes of action as requested in Natusch's fourth claim.

## IV. CONCLUSION

Natusch's complaint consists solely of matters over which the Court does not possess subject matter jurisdiction. Nor is he entitled to the monetary, declaratory, and injunctive relief that he seeks. Therefore, following de novo review of Natusch's specific objections, and finding no clear error as to the remaining portions of the R&R, the Court:

1.   **ADOPTS** the R&R (Dkt. No. 31);

2.   **OVERRULES** Natusch's objections (Dkt. No. 33);

3.   **GRANTS** the defendants' Motion to Dismiss (Dkt. No. 18);

4.   **DENIES AS MOOT** Natusch's Motion to Determine Status of Third-Parties (Dkt. No. 15);

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND
RECOMMENDATION [DKT. NO. 31], GRANTING DEFENDANTS' MOTION
TO DISMISS [DKT. NO. 18], AND DISMISSING CASE WITHOUT PREJUDICE**

5.    **DENIES AS MOOT** Natusch's Motion for Leave to Toll Time
(Dkt. No. 16);

6.    **DENIES AS MOOT** Natusch's Motion for a Preliminary
Injunction (Dkt. No. 17);

7.    **GRANTS** Natusch's and the defendants' unopposed motions to
seal the complaint and motion to dismiss (Dkt. Nos. 3;
20; 22), as they contain information considered sensitive
under state rules and Fed. R. Civ. P. 5.2; and

8.    **DISMISSES** this case **WITHOUT PREJUDICE**.[8]

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this order to
counsel of record and to the pro se plaintiff, certified mail and
return receipt requested, and to strike this case from the Court's
active docket.

**Dated:** March 28, 2017.

                                   /s/ Irene M. Keeley
                                   IRENE M. KEELEY
                                   UNITED STATES DISTRICT JUDGE

---

[8] The Court's dismissal is without prejudice as it is based
primarily on the lack of subject matter jurisdiction.